## No. 1142.

## LUCINDA AND A. MCGUIRE WILLIAMS AND HUSBANDS vs. THE WESTERN STAR LODGE No. 24 OF FREE AND ACCEPTED MASONS OF MONROE.

1. Private corporations must be authorized by the legislature or established according to law. When legally established, they may hold real estate, and receive legacies and donations.

   They may enact statutes and by laws for their government.

   The right of succession is inherent to their nature, and they transmit their successions and their rights of property.

2. A corporation cannot fulfill another office of public or personal trust.

   A corporation legally established may be dissolved by an act of the legislature, if they deem it necessary for the public interest.

3. The Grand Lodge was incorporated by an act of the legislature in 1816, and given full powers to hold real estate and to receive donations and legacies. It also chartered all such subordinate lodges as the Grand Lodge had at that time created, and conferred upon them equal powers.

   By the act of 1819, all lodges that had been organized in the *interim*, were likewise incorporated, and those which might be subsequently organized also.

4. As a general rule the question as to the forfeiture, or dissolution of charters and acts of incorporation is one which concerns the public order, and the corporation is presumed to exist for all purposes of justice until the forfeiture is declared by the judgment of a competent court in some proceeding to which the State is a party.

5. New legislation cannot be engrafted upon different and distinct subject matter by way of amendment without mention being made of the object in the title; but any subject

matter that is germaen to the original text may be incorporated without being amenable to this objection, if it be stated in the title what particular law is to be thereby amended or reversed.

6. Every disposition by which the donee or the legatee is charged to preserve for or to return to a third person is null; though a disposition by which a third person is called to take the gift in case the donee does not take it is valid; and so is a disposition by which the usufruct is given to one and the naked property to another.

7. The intention of the testator must principally be endeavored to be ascertained without departing from the proper signification of the terms of the testament, and same must be understood in the sense in which it can have effect rather than that in which it can have none. The intention of the testator must prevail over the grammatical meaning of the words employed in the testament, if from other dispositions contained therein or other words employed, it is manifest that he had another thought than that the terms employed in a particular disposition would otherwise convey

8. "Legacies to pious uses" are those which are destined to some work of piety, or object of charity, and are highly favored by the law, on account of their motives for sacred uses and their advantage to the public weal.

A PPEAL from the Fifth District Court, Parish of Ouachita.
    *Young*, J.

*Ludeling & Stillman* for Plaintiffs and Appellants.

*Potts & Hudson; Stubbs & Russell* and *Boatner & Boatner* for Defendants and Appellees.

The opinion of the Court was delivered by

WATKINS, J.   The plaintiffs, alleging themselves to be universal legatees under the last will of Louisa L. McGuire, deceased, seek to have item third of said testament declared null and of no effect, on the following grounds, viz:

1st.  Because the testatrix gave and bequeathed to the Western Star Lodge No. 24 of Free and Accepted Masons, of Monroe, La., her plantation on Bayou de Suard, requesting among other things, "that the net revenues of said property be used by said lodge for the support and education of the necessitous widows and orphans of deceased Masons," and that said clause or item of the testament was incorporated into it through undue influence and contrary to her real wishes.

2d.  That same is null and void because it contains substitutions and *fidei commissa*, and *invests* said defendant lodge with a *title* stripped forever of use and *right of disposal*; creating a tenure which has no warrant in the laws of Louisiana;" takes the plantation out of the reach of commerce; changes the nature of the title she transmits, and creates a perpetuity unauthorized by law and against the intent and policy of the State, and at variance with its settled jurisprudence thereof.

3d.  The Western Star Lodge No. 24, F. and A. Masons, of Monroe,

is not an incorporated institution or corporation organized under the laws of this State, and had not the capacity to take or receive a legacy or bequest of the testatrix, and same lapsed—if otherwise valid—for the want of a donee with capacity to receive; and if same was incorporated, it was and is only authorized "to manage its own affairs," and "cannot fulfill any office of personal trust;" and that the item complained of constitutes said lodge a trustee for the necessitous widows of deceased Masons, and for whom said lodge is required to manage and control the plantation bequeathed, contrary to law, and the purposes for which said Lodge was organized.

They complain of the act of the testamentary executors in surrendering the property to the Lodge, and allege that they, in addition, surrendered lots 4, 5 and 6 of sec. 10, township 18, range 4, containing 128 acres, which is not a part of the McGuire plantation, and was not embraced in the clause or item three of the testament.

All of the members of the Western Star Lodge are enumerated in petition, and their prayer is "that the Western Star Lodge No. 24 of F. and A. Masons, of Monroe, and the several members thereof, as well as the testamentary executors and lessee, be cited: and they as universal legatees under said will, be declared the *owners* of said plantation and revenues, with legal interest, and that the executors render an account.

The defendants join in an exception of no cause of action, which was referred to the merits, and they thereafter file separate answers.

The answer on the part of the lodge is that it was organized and instituted on the authority of the Grand Lodge of the State, duly chartered by the legislature thereof, and whereby it was vested with full power, authority and capacity to receive, take and apply bequests and donations, for the uses and purposes intended by the institution of the Masonic order.

It admits the receipt of the plantation in controversy from the executors of the will of Mrs. McGuire, and the lots mentioned as separate therefrom, though insisting that same formed a part of the plantation and were anciently purchased for the purpose of timber use, and which is frequently overflowed and of little value otherwise.

It specially denies that the item of the testament complained of contains either a substitution or *fidei commissum*, and "avers that said donation was made to it (said Lodge) simply, directly and unconditionally, without any restraint as to its future disposition, and that it now *owns* and *holds* the same in fee simple and in its own right and in *absolute* and *unconditional ownership*," and a prayer is made for the

rejection of all of the plaintiffs' demand; and in the event of judgment against the Lodge that there be an allowance in its favor of the sum of $2200, for the reimbursement of expenditures, betterments, taxes and repairs.

The executors, in substance, adopt the answer of the Lodge and insist upon their exception.

## I.

The question first to be considered is whether in 1882, when the testatrix died, the Western Star Lodge No. 24, F. and A. M., was an incorporated institution, possessing the capacity to take and receive this bequest. It is argued that this question is vital; and if the defen- dant Lodge cannot show its incorporation and capacity to take and receive the bequest in question the controversy is at an end.

Private corporations must "be authorized by the Legislature, or established according to law." R. C. C. 432.

Corporations legally established "may possess an estate," and "are capable of receiving legacies and donations;" and "may enact statutes and regulations for their own government." R. C. C. 433.

The right of succession is inherent to the nature of corporations, and they transmit to their successions their rights and property. R. C. C. 434.

A corporation cannot fulfill another office of personal trust. R. C. C. 441.

A corporation legally established may be dissolved by an act of the Legislature, if they deem it necessary or convenient to the public interest. R. C. C. 447.

From the record it appears that on the 18th of March, 1816, the Leg- islature of the State incorporated the Grand Lodge of the State of Louisiana, upon the petition of certain members thereof, for the pur- poses of the promotion of the good of the craft, and the dissemination of charity and benevolence; and which declared "that the several per- sons hereinbefore named, and others who are or may become members of the said Grand Lodge, and their succession, shall be and *they are hereby deemed to be a body corporate and politic* in name and deed, by the style of the Grand Lodge of the State of Louisiana, and by the said name and style shall have perpetual succession * * * * and shall have full power to make, alter, amend and change such by-laws as may be agreed on by the members of same."

It was further enacted that said Grand Lodge shall have full power "to take, hold and enjoy real and personal property * * * * and to receive, take and apply any bequest or donation as may be made to and for the uses and purposes intended by the said institution."

It further provided "that all the regular lodges *already* constituted,. under the power and jurisdiction of the Grand Lodge, *are hereby declared* to be bodies corporate and politic in name and deed   *   *   * with *equal powers* to those which are hereby given to the said Grand Lodge, so long as said Lodges remain under the power and jurisdiction of said Grand Lodge," etc.

The record further discloses that on the 11th of February, 1819, the legislature enacted an act supplemental to the act of 1816, the provisions of which are "that all the regular lodges *which have been* constituted by the Grand Lodge of the State of Louisiana *since* the passage of the act to which this is a supplement, as well as all the regular lodges which *shall be hereafter constituted* by the same, are hereby declared to be bodies corporate and politic   *   * with equal powers, to those which are given to the said Grand Lodge by the said act, etc."

The record also discloses that on the 20th of April, 1872, the act of March 18, 1816, was further amended and supplemented by the legislature by conferring upon the *Grand Lodge* of the State power to *sell, mortgage* or otherwise *encumber* any species of property; to borrow money upon mortgage of real estate, or pledge of personal property; to issue bonds, etc., "and that these powers shall attach to *all* the regular lodges which have *heretofore been* or shall hereafter be constituted by the said Grand Lodge, etc."

It is obvious that these statutes confer full and plenary power upon the Grand Lodge and upon all other lodges which have been constituted by the Grand Lodge *since* their enactment, to take and receive; to use and dispose of such property as is designated in the testamentary bequest under consideration.

But it is earnestly argued by plaintiffs' counsel that the laws of 1816 and 1819 were repealed by the provisions of art. 123 of the Constitution of 1845, which forbade the *creation* of corporations by the legislature,. coupled with the provisions of art. 142 of the same instrument which contains the usual repealing clause.

A similar provision is contained in the Constitution of 1879; but we consider that same did not have the effect claimed for the quoted provision of the Constitution of 1845. It was not an express repeal, and cannot be fairly construed into a repeal by implication.

The object the framers of those two instruments evidently had in view was to remedy the existing evil, of permitting the legislature to create an *unlimited* number of *private* corporations to the great detriment of the public interest. It certainly was not their purpose to thereby annihilate all the private corporations in the State, and with-

out regard to the disastrous results such a sweeping repeal might produce.

This Court's predecessors have, in at least one well considered case, maintained a contrary view to the one that is pressed upon our attention by plaintiffs' counsel. We refer to the case of Polar Star Lodge No. 1 vs. Polar Star Lodge No. 1, 16 Ann. 53 *et seq.* In that case the Court said: "In 1816, the legislature, by a *general* law, incorporated the Grand Lodge of Louisiana, and all other lodges under its jurisdiction, so long as said lodges should remain under the power and jurisdiction of said Grand Lodge."

"In 1819, the power conferred by the legislature upon the Grand Lodge to *create masonic corporations* under its jurisdiction is in these words, viz: *Be it enacted, etc.*, That all the regular lodges, which *have been* constituted by the Grand Lodge of the State of Louisiana since the passage of the act to which this is a supplement (1816) as well as all the regular lodges which shall be *hereafter constituted* by the same, are hereby declared to be bodies corporate and politic, in name and deed * * with *equal powers* to those given to said Grand Lodge by said act, etc. * * * In February, 1855, the Grand Lodge granted a charter to the Polar Star Lodge No. 1. This Lodge, being the only masonic body of that name, continued to act under the jurisdiction of the Grand Lodge until 1868."

Again: "As a general rule, the question as to the forfeiture or dissolution of *charters* and *acts* of incorporation is one which concerns the public order, and *the corporation is presumed to exist for all purposes of justice* until the forfeiture is declared by *the judgment of the court* in some proceeding in which the State is a party. No provision has been made, which we recollect, for the surrender of *charters*, except those in 1812, in relation to banks. Whether the Grand Lodge has the power to declare the forfeiture of Masonic charters granted by itself, or to receive the surrender of the same, is not now necessary to determine; for it does not appear that it has accepted the surrender of the charter of 1855, nor declared the forfeiture of the same. It must, therefore, be assumed that it still exists."

The authority of that case is seriously questioned by plaintiffs' counsel; but, in our opinion, without avail. That suit was brought to annul a donation of real property. It was made a question therein whether the plaintiff was the same corporation as that formed in 1855, or one having its origin since the donation was made in 1858.

It is obvious that this question was a *vital* one in that case; and if

the plaintiff could not trace back its origin to a time, *anterior* to *the date of* the act of *donation*, that the controversy therein was ended. The Court in that case used this argument, and we think with propriety:

"It is further argued by the plaintiffs' counsel that the Western Star Lodge No. 24 is only an *auxiliary* corporation and possessed, as such, only such *corporate* powers as have been delegated to it by the Grand Lodge. This is an error. The acts of the Legislature, above quoted, not only declares that the Grand Lodge is a body corporate and politic, but it likewise declares that all the regular lodges which have been constituted by the Grand Lodge, as well as all the regular lodges which shall be hereafter constituted by the same, 'are hereby declared to be bodies politic and corporate,' etc. While some may be subordinate Masonic bodies, they are at the same time independent corporations—each one deriving its charter from the State by and through acts of the Legislature."

It is also insisted that Act No. 72 of 1872, amending act of 1816, is unconstitutional, because same does not express its "object or objects in its title." Art. 114 of Const. 1868; and strong reliance is placed on 5 Ann. 93 and 11 Ann. 723, as bearing out the contention. In our view that act was not essential to the existence or perpetuity of the Western Star Lodge No. 24.

While it is true that new legislation upon a *distinct and different subject matter* cannot be incorporated into an existing statute *by way of amendment*, without mention being made of its object in the title, it is equally true that any subject matter that is germain to the original text may be thus incorporated without being open to objection.

The title of Act No. 72 of 1872 is as follows, viz: "An act to amend the *second* section of an act entitled an act incorporating the Grand Lodge of the State of Louisiana, etc." The section thus amended confers upon the Grand Lodge the power to take, hold and enjoy real and personal property, and to receive, take and apply any bequest or donation; and its amendment consists solely in the *enlargement* of the powers thereby conferred, by authorizing it to sell, mortgage, encumber or pledge such property, and to borrow money on the faith of it, and to issue bonds or other obligations to pay money. This amendment was clearly indicated in the title of the act, and the act itself is not amenable to the objection urged against it.

We are therefore of the opinion that the Western Star Lodge No. 24, F. and A. M., was, at the date of the probate of Mrs. McGuire's will, a private corporation, chartered by the legislature and possessing at the time full power and capacity to take and receive the bequest therein contained. We are also of the opinion that no formal acceptance by the lodge of the *charter* conferred by a legislative enactment was at all necessary; the fact that the lodge acted under its charter from the Grand Lodge furnishes conclusive proof of such acceptance;

and the record furnishes abundant evidence that said lodge has so acted through a long series of years, and is so acting at this time. It has also accepted the bequest in express terms and is now in the enjoyment of the property.

### II.

The plaintiffs are universal and residuary legatees or testamentary heirs, and are themselves recipients of the bounty of the decedent. They occupy the same position as creditors or simple heirs of the deceased and have no right to sue for the reduction of any donation made by the deceased, unless it be of such dispositions as are reprobated by law. R. C. C. 1504, 1519.

The clause or item of the testament complained of as null and void reads as follows, viz: "I *give and bequeath* to Western Star Lodge No. 24, F. and A. Masons of Monroe, *my* plantation on bayou de Suard in the parish of Ouachita, *desiring and requesting* that after the payment of the first year's revenues, after my death, to Annaretta Williams, as directed in item one, and the securing of a home for Eliza Vinson to the value of five hundred dollars *the net revenues of said property be used* by said lodge for the support and education of the necessitous widows and orphans of deceased Masons, within the jurisdiction of said lodge.

"I further give and bequeath to Western Star Lodge No. 24 the diamond pin given by the late Mr. Pargoud to my husband, R. F. McGuire, the lodge to make such disposition of it as they shall see proper."

The plaintiffs allege that this item is null and void, because it contains substitutions and *fidei commissa* and invests said lodge with a title that is stripped forever of use and the right of disposing of same, thereby creating a trust or tenure which has no warrant in law and takes the property bequeathed out of commerce.

On the other hand, the lodge contends that said item three contains neither a substitution nor a *fidei commissum*, but that it conveys to the lodge an absolute, unqualified and indefeasable title in fee simple to the property bequeathed for the purposes and objects of that institution.

The lodge announces that the objects of Masonry are charity to all mankind, and especially to members of the order and their families; assistance to the distressed and unfortunate and the poor and needful, and aid to the widows and orphans of deceased members of the craft, within their own jurisdiction and beyond it, in so far as they are able.

Let us see whether the item of the testament under consideration is amenable to the charge preferred against it.

The code provides that: "Substitutions and *fidei commissa* are and

remain prohibited. Every disposition by which the donee, the heir or the legatee *is charged to preserve for or to return a thing to a third person* is *null*, even with regard to the donee, the instituted heir or the legatee." R. C. C. 1520.

The disposition by which a third person is called to take the gift in case the donee does not take it, is not a substitution. R. C. C. 1521.

The same is true of a disposition by which the usufruct is given to one, and the naked ownership to another. R. C. C. 1522.

To which class does this disposition belong, if either ?

The Code has provided a rule for the interpretation of acts of last will. It declares that the "intention of the testator must principally be endeavored to be ascertained without departing from the proper signification of the terms of the testament." R. C. C. 1712.

"A disposition must be understood in the sense in which it can have effect rather than that in which it can have none." R. C. C. 1713.

In 8 Ann. 172, The State of Louisiana vs. The Executors of John McDonogh the Court said : " The intention of the testator must prevail over the grammatical meaning of the words which he has used ; provided his intention is ascertained by dispositions contained, and words used in the will, and it is manifest that he had another object, and another thought than that which the terms used in a particular disposition would otherwise convey.

" When the sense of a particular disposition, resulting from the entire instrument has been ascertained, courts may go further in cases of testaments than in cases of contracts, in *disregarding* the *grammatical* meaning of the words used, *so far indeed as to supply words omitted*, which may be done whenever the obvious meaning and the other parts of the will restore these words naturally."

Applying these simple rules to the interpretation of this disposition in question, and what is the result ?

Can we ascertain the intention of the testatrix without departing from the terms of the will ?

Can such a construction be adopted and give this disposition effect ? If the true intention of the testatrix prevails over the grammatical signification of the words used in the will, is the idea of it containing a trust, a substitution, or *fidei commissum*, forfeited or overcome ?

Does it show that Western Star Lodge No. 24, F. and A. M., "is charged to *preserve for* or to return the thing—the plantation bequeathed —to a third person?" If so, for what third person is it to be so preserved, or to what person is it to be returned ? To whom did this testament pass the title at the testatrix's death ? The words employed

.are: "I *give and bequeath* to Western Star Lodge No. 24, F. and A. Masons, of Monroe, Louisiana, *my plantation* on bayou de Suard in the parish of Ouachita, *desiring* and *requesting* that ·*· · ·* · * the net revenues of said property be *used* by said lodge for the support and education of necessitous widows and orphans of deceased Masons, etc."

Is there any difficulty in giving effect to this disposition?

It most unequivocally and undeniably gives and bequeaths the plantation to the Lodge. It does not direct or require it to *preserve* this plantation for any one named or designated. It does not direct or require it to *return* said plantation to any one named or designated. The testatrix expresses a desire, and accompanies same with the request of the donee that the net revenues of the plantation shall be used and employed in dispensing certain charities enumerated. This request is made of the Western Star Lodge as a charitable institution.

This request was in the direction of the objects and purposes of the order. The gift is made to the *same person* of whom the request is made. There is no *third person* involved in the matter.

In our opinion the will creates neither a substitution nor a *fidei commissum*.

It does not create a prohibited *trust*, or remove the property from the theatre of commerce.

"This legacy clearly belongs to a class known to the civil law from the foundation of Christianity by the name of legacies to *pious uses*. They are an element in the polity of municipal administrations in all countries, which have preserved the features and jurisprudence of Roman civilization." 8 Ann. 246, McDonogh's will.

"Legacies to pious uses are those which are destined to some work of piety, or object of charity, and have their motive independent of the consideration which the *merit* of the legatees might procure to them. In this motive consists the distinction between this and ordinary legacies." Domat, lib. ix, vol. iv, sec. 6, par. 2.

Legacies to pious uses are highly favored by the law, on account of their motives for sacred usages and their advantage to the public weal; and the great consideration which the law attaches to these legacies controls tribunals in their interpretation of them, and has secured for their support a doctrine of approximation which is coeval with their existence. 8 Ann. 246.

It is far better that the good lady, who honestly desired to make a munificent donation to the defendant for "pious uses," should have that intention carried into effect, and that the wants of widows and orphans be supplied, than that they should be forced to

rely upon the meagre charities of the world, and be a tax upon the people of the parish of Ouachita.

We find it unnecessary to digest and collate the various authorities cited in the briefs of counsel, and which have received due consideration.

Our conclusion is that item three of Mrs. McGuire's will was a legacy to Western Star Lodge No. 24, F. and A. Masons, of Monroe, in *full ownership*, with a destination thereof to charitable and pious uses; and that the same does not create a trust, contain a substitution, or *fidei commissum*, or remove the property bequeathed from the arena of commerce. We are of the opinion that the several small lots alleged to be separate, and detached from the plantation bequeathed, were considered by the ancient owner, as well as the testatrix, as a part of same, and that same were intended to form a reserve for timber uses as an accessory of the plantation; and that such a fact may be proved by parol and by general reputation.

Judgment affirmed.