(43 South. 999.)

No. 16,535.

SAUCIER v. CITY OF NEW ORLEANS.

(May 27, 1907.)

1. STATES—STATE PROPERTY—CONFERRING ADMINISTRATION ON MUNICIPALITY.

Article 58 of the Constitution, in prohibiting the granting of state property to persons or corporations, does not prohibit the state from changing the destination of particular public property or from intrusting the administration of such property to the municipal corporation within the limits of which it lies.

2. DEDICATION—VALIDITY.

A dedication by the state to the "people of New Orleans, for public use, for public park, or amusement park, purposes," of a parcel of land lying beneath the waters of Lake Ponchatrain, is none the less a dedication to the public because the words "people of New Orleans" are used, since those who are not so may become people of New Orleans, if, and when, they choose, or they may avail themselves of the dedication without becoming people of New Orleans.

3. STATUTES—TITLE OF ACT—GRANT OF STATE PROPERTY—CONSTITUTIONAL LAND.

Act No. 209, p. 363, of 1906, contravenes neither article 58 nor article 31 of the Constitution.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred. Durieve King, Judge.

Action by Robert E. Saucier against the city of New Orleans. Judgment for defendant, and plaintiff appeals. Affirmed.

Cage, Baldwin & Crabites for appellant. Samuel Louis Gilmore, City Atty., and John Fowle Crosby Waldo, Asst. City Atty., for appellee.

MONROE, J. Plaintiff as a resident, citizen, and taxpayer of New Orleans, enjoins the city from selling the lease of certain property known as "West End," on the grounds that the property belongs to the state; that the law under the supposed authority of which the lease is to be sold, is unconstitutional, and that the proposed lease will involve the city in ultra vires contracts, increase its expenditures, and add to the burden of its taxpayers. The city pleads the exception of no cause of action, denies the allegations of the petition, and alleges, in substance, that a portion of the property in question belongs to it, and that the statute attacked (Act No. 209, p. 363, of 1906) makes a dedication of property to the public and vests in the city the administration of the same.

The case is submitted upon an agreed statement of facts (subject, as to some of the admissions, to the objection of irrelevancy), to the following effect, viz.:

That plaintiff is a citizen, resident, and taxpayer of New Orleans and has an interest that its officers shall not transcend their authority, and that the city shall not enter into contracts which are unlawful or beyond its powers.

That the city council adopted, and the mayor approved, the Ordinance No. 4018, New Council Series, a copy of which is attached to the petition, and that the comptroller was proceeding thereunder "to advertise for sale the lease of that property belonging to the city of New Orleans and known as "West End,'" when he was stayed by the injunction herein issued.

That the property known as "West End," comprising the protection levee and the land within said levee, between the New Basin Canal and the line dividing the parishes of Orleans and Jefferson, has since January, 1880, been leased by the city of New Orleans as a public park, or amusement park.

"That prior to the adoption of Act No. 209, of 1906, the 25-year lease of said property, dating from January 17, 1882, had expired, and Ordinance No. 3170, N. C. S., directing the comptroller to advertise a 50-year lease of the West End property for sale, had been approved, and its execution had been enjoined by the board of commissioners of the Orleans levee district, in the suit of the board of commissioners of the Orleans Levee District v. City of New Orleans, No. 19,151, of the docket of the civil district court.

"That Act 209, of 1906, was introduced into the General Assembly by joint consent and approval of the city of New Orleans and the board of commissioners of the Orleans levee district, in order that a lease of the property for public park and amusement park purposes might be perfected. * * *

"That the question in controversy herein between the plaintiff and defendant, and which the court is called upon to decide, is the constitutionality vel non of Act 209, of 1906; and that the value of the lease injoined is in excess of $250,000."

Act No. 209 of 1906 including the title, reads as follows:

"An act to amend and re-enact section 112 of Act 45, of 1896, so as to provide for the lease of the property known as West End.

"Section 1. Be it enacted * * * that section 112 of Act 45, of 1896, be amended and re-enacted so as to read as follows, to wit: That the city council shall have no power to make any lease or sale of city property, except after not less than thirty days advertisement thereof, by the comptroller, to the highest, or lowest, bidder as the case may be, according as the specifications of said lease or sale may require.

"That, in order to provide a public park, or amusement park, on Lake Ponchatrain, at West End, * * * the following described lands, in the parish of Orleans and city of New Orleans, to wit: that portion of the protection, or the revetment, levee bordering on Lake Ponchatrain and lying between the west bank of the New Basin, on the east, and the prolongation of the boundary line between the parishes of Orleans and Jefferson, on the west; all lands now lying under the waters of Lake Ponchatrain, between the protection, or revetment, levee, on the south, the west bank of the New Basin Canal, on the east, the prolongation of the boundary line between the parishes of Orleans and Jefferson, on the west, and a line drawn parallel to, and in front of, said protection, or revetment, levee, a distance 1500 feet therefrom, on the north; all lands now lying under the waters of Lake Ponchatrain, in the rear or south, of the aforesaid protection, or revetment, levee, on the north, the shore of Lake Ponchatrain on the south, and the lands belonging to private persons, on the east and west, shall, and the same are, hereby, dedicated to the people of the city of New Orleans, for public use, for public park, or amusement park, purposes. The city of New Orleans is hereby granted the full administration and control thereof, with power to fill in with earth all that portion of Lake Ponchatrain lying north of the aforesaid revetment levee, within the limits herein above set forth, and erect thereon such structures and improvements as it shall see fit; and right and authority, by filling in, to erect and make islands in the portion above described, lying south of the revetment levee, and administer the whole of the property herein above described for public park and amusement park purposes. That the city of New Orleans shall have, and is hereby granted, the right, in the administration of the aforesaid property for public park, or amusement park, purposes, also to lease the same for a period of years, on such terms and conditions as it shall see fit; provided, that the said lease shall be made according to the formalities herein above prescribed, and that the consideration exacted or to be paid for said lease shall be dedicated and used, exclusively, for the improvement and betterment of the property hereby dedicated to public park and amusement park purposes. That the board of commissioners of the Orleans levee district is hereby authorized to allow the city of New Orleans, or its lessee or les-

sees, to make use of the protection or revetment levee at West End, aforesaid, as part of the aforesaid public park or amusement park, on condition, that said city of New Orleans, or its lessee or lessees, shall maintain said protection or revetment levee, at all times, in good order and condition, free of any expense to the board of commissioners of the Orleans levee district, subject to the paramount control and supervision of the said board. Provided, that, if any of the property above described is necessary for levee purposes, no compensation shall be paid therefor. Provided; that, after the expiration of the lease the property shall revert to the city of New Orleans."

Ordinance 4018, N. C. S., authorizes the sale of a lease for 50 years of the property thus described, for $250,000 to be "paid within five years, and expended in the betterment of the property," which is to be lighted, maintained, and (within specified limit) policed, at the expense of the lessee; the obligation of maintenance including that of maintaining the levee, subject to the control and supervision of the commissioners of the Orleans levee district, and to the condition that no compensation shall be paid for any part of the property that may be needed for levee purposes.

1. Plaintiff alleges that the act above quoted makes a grant of state property, in violation of so much of article 58 of the Constitution as reads:

"The funds, credit, property, or things of value, of the State * * * shall not be loaned, pledged, or granted to, or for, any person, or persons, association or corporation, public or private."

And, in determining whether this allegation is well founded, we have thought it advisable to consider briefly the status of the property affected, in connection with the terms of the alleged grant.

The city of New Orleans is said to "front" upon the Mississippi river, and in 1871 its rear boundary ran "along" the shore of Lake Ponchatrain, from the Jefferson parish line to the lower line of the parish of Orleans. (City Charter, Act No. 7, p. 30, of 1870, Extra Sess. § 1). In that year (1871) the General

Assembly passed Act No. 30, p. 75, entitled "An act to provide for the drainage of New Orleans," which contemplated the building of protection levees, extending from the river to the lake, above and below, and along the lake shore, as, also, the excavation of a system of drainage canals; that part of the act which bears upon the matter now under consideration, reading, in substance, as follows, to wit:

"That the Mississippi and Mexican Gulf Ship Canal Company shall be empowered to dig a canal, and, with the earth removed from the same, to build, outside of said canal, a protection levee, in the rear of the city * * * and near the shore of Lake Ponchatrain; the exact location of said canal and levee * * * to be designated and fixed by the board of city administrators, and the title of the lands necessary for such works to be procured, and held, for the benefit of the city * * * by the board. * * * ; the said lake shore canal to be not less than 65 feet wide, on the surface, * * * and the said protection levee to be not less than 100 feet wide and of sufficient height to completely protect the city from overflow from Lake Ponchatrain."

The act further provided that the city should pay for the excavation and filling thus required to be done at the rate of 50 cents per cubic yard, both ways—that is to say, 50 cents per cubic yard for removing the earth, in digging the canal, and 50 cents additional for piling it in the shape of a levee—and agreeably to those requirements the canal was (presumably) dug and the levee was (certainly) built "near" (but not on) the lake shore, from the Jefferson parish line to the west bank of the New Basin Canal; the latter point being probably less than two miles from the former, and very far short of the lower line of the parish of Orleans, and the space between the two points being the property now known as "West End," though it lies upon what was then the extreme northern boundary of the city—a boundary which has since been removed, or extended, to the middle of the lake, and of which this court takes notice that it then had upon the one side an almost impenetrable swamp, and

upon the other the waters of the lake, which, for some distance from the shore, were too shallow for commercial navigation. It may be here stated that the Constitution (of 1868) in force when the act of 1871 was passed and when the work of excavation and building was done contained no article similar to artcle 58 of the present Constitution.

Whether, in the doing of the work mentioned, the levee was built upon the outside of the canal then excavated, "and, with the earth removed" therefrom, as provided by the statute, we are not informed; nor does the record show what land, if any, lying beneath the waters of Lake Ponchatrain there is between the levee on the north and the lake shore on the south, though it seems not unlikely that, instead of expropriating private property for those purposes on the lake shore, the city and the canal company, acting under the authority to construct the works, "near the shore," and to locate them as might seem advisable to the administrators of the city, excavated the canal, and built the levee, in and upon the bottom of the lake, and thereby partially inclosed and impounded, between the levee and the shore, some of the land lying beneath the waters of the lake as, also, some of the lake water. However that may be, the levee and (presumably) the canal were constructed, by legislative command, at an enormous cost to the taxpayers of New Orleans, and, as constructed, may be said to have been approved by the state, when, some five years later (by Act No. 16, p. 35, of 1876), the city was authorized to buy out the canal company and complete the general system of drainage and levee protection which that corporation had undertaken and begun.

In view of the facts thus stated, it seems to us that, however the rights of the parties may be affected by the principles of law regulating the administration and control of public property, neither the state nor any one assuming to represent the state can at this time assert title in its behalf within the meaning of article 58 of the Constitution to the canal and levee thus constructed under legislative mandate, at the expense and for the protection of the people of New Orleans.

This court has said, applying its observations to the city of New Orleans, that:

"A municipal corporation may own property to and over which the Legislature has, while said corporation exists, no right or control in opposition to, or independently of, the will or consent of the corporation; and we think this is consonant with justice. There is a principle involved in it—the principle that those who have to pay, should have a voice in the disposal of what is paid for." New Orleans, M. & C. R. Co. v. City of New Orleans, 26 La. Ann. pp. 481, 483.

Assuming, however, that the whole of the property which is the subject of this litigation (including the canal and the levee) from the shore of the lake to a line 1,500 feet to the north of the levee is to be dealt with as though it were the unincumbered bed of the lake, we proceed to inquire into the nature and extent of the state's control over it.

The question thus presented was exhaustively considered by the Supreme Court of the United States in a comparatively recent case, and the conclusions of that august tribunal, in so far as they need be here applied, were stated as follows:

"It is the settled law of the country that the ownership of, and dominion and sovereignty over, lands covered by tide water, within the limits of the several states, belong to the respective states within which they are found, with the consequent right to use or dispose of any portion thereof when that can be done without substantial impairment of the interest of the public in the waters, subject, always, to the right of Congress to control their navigation, so far as may be necessary for the regulation of commerce with foreign nations and among the states. * * *
"The state holds the title to the lands under the navigable waters of Lake Michigan, within its limits, in the same manner that the state holds title to soils under tide water, by the common law, * * * and that title necessarily carries with it control over the waters above them, whenever the lands are subjected to use. But it is a title different in character from that which the state holds in lands intended for sale. It is a title held in trust for the people of the state, that they may enjoy the naviga-

tion of the waters, carry on commerce over them, and have liberty of fishing therein, freed from the obstruction or interference of private parties." * * *

Proceeding, the court then holds that though a state may grant parcels of land under navigable waters for the building of structures in aid of commerce, and may grant such parcels, "which, being occupied, do not substantially impair the public interest in the land and water remaining," it cannot abdicate its general control "over lands under the navigable waters of an entire harbor, or bay, or of a sea or lake"; such abdication being inconsistent with the exercise of the trust which requires the government of the state to preserve such waters for the use of the public. Illinois Central R. Co. v. People of the State of Illinois, 146 U. S. 387, 13 Sup. Ct. 110, 36 L. Ed. 1018.

The state of Louisiana, it may be here remarked, was admitted into the Union on the same footing as the original states, and has the same sovereign rights (Mayor, etc., of New Orleans v. United States, 10 Pet. [U. S.] 662, 9 L. Ed. 573), and it has long been settled that, under our law, the General Assembly may change the destination of property which has been dedicated to public use, "whenever such a change becomes of public advantage." Parish v. Municipality et al., 8 La. Ann. 149, and authorities there cited.

Without entering, then, into the question of the rights of the state with respect to lands laying beneath the waters of running streams, we conclude that there is nothing in the character of its title to the property here in question which prevents it from changing the destination of that property and intrusting its administration to the city of New Orleans.

That the state must administer its property through some agent, that it may ad-minister such of its property as lies within a particular municipality through such municipality, and that the investiture of a municipality with control of state property, for purposes of administration, is neither the loaning, pledging, nor granting of anything, are propositions which do not admit of discussion. In the instant case it will be observed that by the act of 1906 the property in question is "dedicated to the people of New Orleans, for public use, for public park, or amusement park, purposes," and that the city of New Orleans is granted "the full administration and control thereof, with power to fill in * * *, for public park, or amusement park, purposes," with power to lease, subject to the condition "that the consideration exacted, or to be paid, for said lease, shall be dedicated and used exclusively for the improvement and betterment of the property, hereby dedicated to public park, and amusement park, purposes." So far, therefore, as the city in its corporate capacity is concerned, its only relation to the matter is that it has been chosen by the state to administer certain property and has been granted the authority necessary for such administration; the authority so granted being limited to the extent that the state deemed advisable. It is true that the act recites that the property is dedicated to the "people of New Orleans"; but the dedication being made in express terms "for public use, for public park, or amusement park, purposes," the beneficiary is the public at large, since those who are not so may become people of New Orleans if, and when, they choose, or they may avail themselves of the dedication without becoming people of New Orleans. Nor does it affect the question at issue, that, by the last proviso of the act, the property is to "revert" to the city after the expiration of the lease, the meaning of the proviso being merely that at the expiration of the lease the city is to have the same

control over the property as before, to wit, as the authorized agent of the state.

2. It is said that Act No. 209, p. 363, of 1906, contravenes article 31 of the Constitution, which provides that:

"Every law enacted by the General Assembly shall embrace but one object and that shall be expressed in its title."

The title of the act, as we have seen, reads:

"An act to amend and re-enact section 112 of Act 45, of 1896, so as to provide for the lease of the property known as West End."

Act No. 45, p. 46, of 1896, is the charter of the city of New Orleans, and section 112, as originally enacted, reads:

"That the city council shall have no power to make, or renew, or extend any lease of the wharves or landings, or any lease or sale of city property, except after not less than thirty days advertisement and competition and adjudication thereof, by the comptroller, to the highest or lowest, bidder, as the case may be, according as to specifications of said lease or sale may require."

In the amendment, the words "any lease of the wharves or landings, or," were omitted, and the provisions with regard to the leasing of West End, as heretofore quoted, were added. The omitted words operated no change in the existing law, for the reason that, by Act No. 70, p. 102, of 1896, the administration of the wharves and landings had been taken away from the city and confided to the board of commissioners for the port of New Orleans. The sole purpose of the amending act was therefore to authorise the city to lease, in the manner provided by section 112, particular property, within its territorial jurisdiction, the title to which is at least, in part, vested in the state, and that purpose is specifically declared in the title.

In the case of State v. Sugar Refining Co., 106 La. Ann. 553, 31 South. 181, upon which plaintiff relies, it appeared that Act No. 103, p. 160, of 1900, was entitled:

"An act to amend and re-enact sections 10, 12 and 14 of Act No. 171, p. 387, of 1898, entitled

'An act to levy, collect and enforce, payment of an annual tax upon all persons pursuing any trade, profession, vocation, calling, or business; [the title of act No. 171 of 1896 being copied entire in the title of act No. 103 of 1900].'"

It also appeared that, whereas the tax imposed sugar refineries by the act of 1898 was so imposed by section 11 of that act, there was added in the act of 1900 to the amendment and re-enactment of section 10 (which did not originally refer to sugar refineries) a proviso, materially changing the tax upon those industries. In determining the question of constitutionality, this court said:

"We do not think that the proviso in question legally belongs, or was intended to belong, or can legally be placed, where it is; nor that we can carry it over and back into section 11, under the title of the amendatory act."

But the court also said:

"It may be that a particular section of a law may, by amendment, be broadened so as to bring within its provisions some particular matter which could, logically and legally, have been placed in it originally, but this matter must be something which had not already been provided for in another section of the same statute which was proposed to be amended."

And the instant case falls rather within the meaning of this last stated view than of that which was applied to the facts of the case then under consideration. For section 112, of Act No. 45, p. 79, of 1896, originally provided for the leasing by the city of the wharves and landings, a species of property which the state holds, in trust for the public. Hence, when it was proposed to provide for the leasing of other property similarly situated, to wit, a portion of the bed of a tide water lake within the corporate limits of the city whose charter was to be amended, it was natural and logical that such purpose should be accomplished by amending that section of the charter which dealt with the leasing of property so held, and, as the amending act specified not only the section to be amended, but the specific property to be affected, we are of opinion

that it is not obnoxious to the objection which we are now considering. Williams v. Western Star Lodge, 38 La. Ann. 626.

We find no error in the judgment appealed from, which was in favor of defendant, and it is accordingly affirmed.