BOUTALL, Judge.
This is a suit in the nature of a declaratory judgment brought by Jefferson Parish School Board to determine the nature and status of its right to approximately 28 acres of land situated in City Park of New Orleans, Louisiana, being the fractional remainder of the 16th Section of Township 12, South Range 11 East, Southeastern Land District of Louisiana. Specifically, the suit seeks to declare that Act 405 of the Louisiana Legislature of 1962 is unconstitutional, and that subsequent transfers of the 16th Section property are illegal, and should be set aside. The suit seeks to have the Jefferson Parish School Board declared to be a partial owner of the 16th Section or in the alternative, that it be reimbursed its proportionate share of the cash value of the property.
The defendants have brought a motion for summary judgment, and it is conceded that there is no dispute as to the facts underlying this case. The trial court rendered a judgment in favor of defendant, dismissing plaintiff’s suit, and the Jefferson Parish School Board has appealed.
The subject property is the remainder of one of those 16th Sections of each Township which were granted by the United States of America to the various states upon admission to statehood to be used for school purposes. The original survey of the Township showed that the 16th Section was only a fractional 16th Section, and much litigation has occurred affecting both the boundaries and the area of the Section. See Board of Directors v. New Orleans Land Company, 138 La. 32, 70 So. 27 (1915); Leader Realty Company v. Lakeview Land Company and Leader Realty Company v. New Orleans Land Company, 142 La. 169, 76 So. 599 (1917); State v. New Orleans Land Company, 143 La. 858, 79 So. 515 (1918); Brott v. New Orleans Land Company, 151 La. 134, 91 So. 653 (1922); Meyer v. State, 168 La. 146, 121 So. 604 (1929). As presently constituted the fractional section is approximately 16 acres in City Park of New Orleans lying roughly in a long narrow rectangle. While the 16th Section is located entirely in Orleans Parish, the Township itself lies in the proportion of 85.16% in Orleans and 14.84% in Jefferson Parish.
Because of the location and shape of the fractional Sixteenth Section, the Orleans Parish School Board determined that it should arrange a transfer or exchange of that land for a tract on the north boundary of City Park upon which to erect a high school. After considerable negotiations, an arrangement was made amongst the defendants whereby the exchange could be made. The Louisiana Legislature then passed Act 405 of 1962 providing for the state to transfer title of the Sixteenth Section Lands to the City of New Orleans to be managed and controlled by the New Orleans City Park Improvement Association (a State Agency) for park purposes, and further provided authorization to the City of New Orleans to convey another tract containing 17 acres to the Orleans Parish School Board for public school purposes. The Act further provided that this latter land acquired by the Orleans Parish School Board shall be held by it for the same purposes, benefits and uses as is presently provided by law for Sixteenth Section Lands, and the subsequent sale or other disposition, as well as the disbursement of the proceeds of any subsequent sale thereof, shall be the same as provided by law for Sixteenth Section Lands and the rights of the Jefferson Parish School Board in said *599 land shall be the same as they were in the Sixteenth Section conveyed in Section 1 of the Act. Subsequent to the passage of this Act, the transfers weré effected so that the fractional Sixteenth Section now forms a part of City Park and is administered by the New Orleans City Park Improvement Assn., and the other tract is utilized by the Orleans Parish School Board, which has built a high school upon the tract.
Jefferson Parish School Board contends that Act 405 of 1962 is invalid for the following reasons: By an act of Congress of February 15, 1843, 5 Stat. 600, the Legislatures of Illinois, Arkansas, Louisiana and Tennessee were authorized to sell the Sixteenth Sections in their respective states, the proceeds derived therefrom to be used for the benefit of the various school systems located within the Township in which the land was sold. The Statute further requires that the land shall in no wise be sold without the consent of the inhabitants of the Township or District in which they are located. Thereafter, the Louisiana Legislature, beginning with Act 321 of 1855, which, together with other Acts on the subject are embodied in LSA-R.S. Title 41, Chapter 6, enacted a series of laws to provide for the public sale and leasing of the various Sixteenth Sections, and also enacted Constitutional provisions culminating in, for the purposes of this suit, the Constitution of 1921, Article 12, Sections 18 and 19 to provide for the distribution of these proceeds. It is contended that the exchange of property authorized by Act 405 of 1962 is illegal in that it does not follow the procedures outlined in the laws enumerated above, and that further there is no distribution of proceeds in accordance with those laws.
The issue of the application of the Act of Congress February 15, 1843, c. 33, 5 Stat. 600, requiring consent of the inhabitants of the Township before sale of Sixteenth Section Lands can be made, has been settled in the case of Meyer v. State, 168 La. 146, 121 So. 604 (1929). That case held that when the survey of Sixteenth Sections in Louisiana was officially approved October 20, 1873, the State of Louisiana had a complete legal title vested in it, and was no longer bound by the conditions and limitations imposed by the 1843 Act of Congress. LSA-R.S. 41:711 similarly provides for an election to be held before sale of school lands, and as to these provisions as well as to others of similar nature, we only say that the Legislature has in its wisdom passed another Legislative Act covering the point in controversy, and that such general statutes cannot prevail in the face of a special statute containing contrary provisions.
Turning to a consideration of the constitutional provisions, to-wit, Article 12, Section 18 and Section 19 of the Constitution of 1921, we do not find in those sections a prohibition against the transaction authorized under Act 405 of 1962. Those sections envisage a recovery of proceeds from lands erroneously sold, which is either credited proportionately to the school boards involved, or placed into a school fund for later use by those school boards. We note for example that the same Constitution in Article 12, § 14 points out the sources of funds for support of public schools. After enumerating the avails of certain taxes, etc., it sets out in subsection (c) additional state funds, the first of which is the following:
“1. The interest on the proceeds of lands heretofore or hereafter granted by the United States for school purposes and such revenues as may be derived from unsold portions of such lands; provided, that the Legislature is authorized to release all proceeds from the sale of such lands to the parishes for use in acquiring, constructing, and equipping public school-plant facilities.”
Considering these three sections of Article 12, it would appear that the state may sell, lease or otherwise enter into contracts which may provide revenue from the use or disposition of school lands, and while the sections appear to consider that these proceeds will usually be in cash, there is nothing that would prevent the state from legislatively providing for other proceeds not in cash, and the disposition of these proceeds.
Under existing law (R.S. 41:631 as amended Acts 1954, No. 86 § 1) since the *600 Sixteenth Section involved lies entirely in the Parish of Orleans, the Orleans Parish School Board is entitled to buy the tract for its exclusive school purposes, and need only pay into the fund for the benefit of it and the Jefferson Parish School Board the sum of $1.25 per acre. By Act 405, the Legislature has devised a different method of payment than money by exchanging or swapping the Sixteenth Section Tract for another tract of land for use as school purposes, and has preserved the rights of the Jefferson Parish School Board in the second tract, the same as it had in the first tract. There is no complaint made that the tracts are of unequal value, or that the Jefferson Parish School Board has had its right to share in the proceeds lessened by the provisions of Act 405. It is contended instead that the Act has disposed of the land for another governmental purpose, that this constitutes a sale, and that the respective school boards are entitled to their proportionate cash value of the sale.
In support of this contention, appellant urges to us a number of eases requiring cash payment when land is used for other governmental purposes. Appellant relies most strongly on doctrines expressed in the cases of Lassen v. Arizona, 385 U.S. 458, 87 S.Ct. 584, 17 L.Ed.2d 515 (1967) and the case of Alamo Land & Cattle Company, Inc. v. Arizona, 424 U.S. 295, 96 S.Ct. 910, 47 L.Ed.2d 1 (1976). However in those cases it was proposed simply that the state, being owner of the land, could divert its use to a purpose other than a school purpose without compensation. This is not our situation. Here there are proceeds from the transfer of the land, that is, another tract of land for school purposes, with the obligation of school purposes being shifted from one tract to another better suited for school purposes. The transaction authorized under Act 405 was not a sale, but an exchange, the proceeds of the exchange being the new property acquired. Thus the Act is in keeping with the spirit of the original donation of these lands, that is for public school purposes. Instead of the Orleans Parish School Board being able to use the Sixteenth Section upon which to build a school, in this case the same purposes are accomplished by virtue of dedication of new lands for this public school purpose.
This same proposition, that this is an exchange of lands for governmental purposes, would remove Act 405 from the application of Article 4, Section 12 of the Constitution of 1921 which provides:
* * “The funds, credit, property or things of value of the State, or of any political corporation thereof, shall not be loaned, pledged or granted to or for any person or persons, associations or corporations, public or private; * * * * ”
This prohibition is basically directed against the situation wherein the state may make a donation, gift or other free use of its property for other than governmental purposes, and it is not directed against state agencies or political corporations in the conduct of their legitimate affairs. See LeBlanc v. Police. Jury of Parish of Rapides, 188 So.2d 131 (La.App. 3rd Cir. 1966). If the word “granted” were to be interpreted as prohibiting any exchange or sale of Sixteenth Section school lands, the entire statutory system of their utilization for school purposes would be adversely effected, defeating the purposes for which they were originally granted to the State.
The Supreme Court has held in a case involving similar provisions in a prior constitution, that the prohibition against granting state property does not prohibit the state from changing the destination of particular public property or from intrusting the administration of such property to the municipal corporation within the limits of which it lies. Saucier v. City of New Orleans, 119 La. 179, 43 So. 999 (1907). Similarly, a sale of property discovered unsuitable for governmental purposes of the Board of Commissioners of the Port of New Orleans was held not a “grant” within the provisions of this section of the 1921 Constitution. Board of Com’rs of Port of New Orleans v. New Orleans Public Service, 161 La. 741, 109 So. 408 (1926). See also Op. Atty.Gen. 1926-28, p. 273, wherein it was ruled permissible to exchange tracts of land *601 between Louisiana State University and the state insane asylum for benefit of, and more suitability to use of, each institution.
We hold that the prohibitions of Article IV § 12 do not apply to Act 405 of 1962 and the exchanges of property provided therein.
Finally, Act 405 is challenged in that it is a local or special act in violation of Article IV § 4 and Article IV § 6 of the Constitution of 1921, the first as to its content and the latter as to lack of proper publication.
Primarily, we conclude that the Act is not a local or special act. The Act involves the transfer of certain publicly owned property as expressed briefly in the Act’s title:
“To provide additional means and authority to carry out the purposes of the public park located in the City of New Orleans known as the City Park of New Orleans by transferring title to certain State owned lands within the City Park to the City of New Orleans and providing for the management and control thereof by the New Orleans City Park Improvement Association, an agency of the State; and to provide for the transfer of title to other lands by the City of New Orleans to the Orleans Parish School Board, an agency of the State; repealing all laws or parts of laws in conflict herewith.”
State land is in effect owned by all of the citizens of the State and its sale or transfer affects the rights of all citizens generally, not just the citizens of the particular locality in which the land is situated. Op.Atty. Gen. 1944-46, p. 340; Op.Atty.Gen. 1942-44 p. 702; 82 C.J.S. Statutes § 14b, and cases therein cited. A statute is not a local or special law if it affects persons or things throughout the state, operates on subject in which the people at large are interested, although to some degree it applies only to a particular locality, or is both general and special or private. Kotch v. Board of River Port Pilot Com’rs for Port of New Orleans, 209 La. 737, 25 So.2d 527 (1946), affirmed, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093. Local or special laws refer to laws wherein private individuals are seeking some private advantage or advancement for the benefit of private persons or property within a certain locality. State ex rel Grosch v. City of New Orleans, 211 La. 241, 29 So.2d 778 (1947).
We note that the property transferred is not to be used by persons for private advantage but for park and recreational purposes of the public generally to be administered by a state agency. Similarly, the other portion of land concerned is to be used for public school purposes within the intent of the Sixteenth Section laws. We refer to the following cases which would seem to involve particular plots of ground and particular governmental use wherein the concerned statute was held not to be special or local and are persuasive in this case. Knapp v. Jefferson-Plaguemines Drainage District, 224 La. 105, 68 So.2d 774 (1953); Benedict v. City of New Orleans, 115 La. 645, 39 So. 792 (1905); Saucier v. City of New Orleans, 119 La. 179, 43 So. 999 (1907). Since we hold Act 405 of 1962 not to be a local or special act the prohibitions of Article IV § 4 and § 6 are not applicable.
For the reason above assigned, we see no prohibition against the enactment of Act 405 of 1962, nor any violation of constitutional provisions which may render it invalid. Accordingly, we affirm the judgment of the trial court.

AFFIRMED